IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHEY HENRY,<br>*individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br>v.<br><br>BEECH-NUT NUTRITION CO.,<br><br>Defendant. | CASE NO.: 1:21-cv-227 (TJM/CFH)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Kathey Henry ("Plaintiff"), on behalf of herself and all others similarly situated, by her undersigned attorneys, for her complaint against Defendant Beech-Nut Nutrition Co. (hereafter "Beech-Nut" or "Defendant"), alleges the following based upon personal knowledge as to herself and her own action, and, as to all other matters, alleges, upon information and belief and investigation of their counsel, as follows:

### INTRODUCTION

1. This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased one or more of certain baby foods manufactured by Beech-Nut.[1]

---

[1] The affected baby foods include the following: (a) Beech-Nut Rice Single Grain Baby Cereal; (b) Beech-Nut Oatmeal Whole Grain Baby Cereal; (c) Beech-Nut Classic Sweet Carrots; (d) Beech-Nut Organics Carrots; (e) Beech-Nut Naturals Sweet Potatoes; (f) Beech-Nut Classics Sweet Potatoes; (g) Beech-Nut Classics Sweet Peas; (h) Beech-Nut Naturals Butternut Squash; (i) Beech-Nut Organics Pumpkin; (j) Beech-Nut Organics Apples; (k) Beech-Nut Naturals Bananas; (l) Beech-Nut Naturals Beets, Pear & Pomegranate; (m) Beech-Nut Classics Mixed Vegetables; (n) Beech-Nut Breakfast On-the-Go Yogurt, Banana & Mixed Berry Blend; (o) Beech-Nut Organics Sweet Potatoes; (p) Beech-Nut Organics Pears; (q) Beech-Nut Organics Apple Kiwi & Spinach; (r) Beech-Nut Naturals Carrots; (s) Beech-Nut Organics Pear Kale & Cucumber; (t) Beech-Nut Oatmeal Whole Grain Baby Cereal; Beech-Nut Rice Single Grain Baby Cereal; (u)

2. Beech-Nut manufactures, markets, advertises, labels, distributes, and sells baby food products throughout the United States, including in this District.

3. Beech-Nut states, "At Beech-Nut®, we make foods for babies using simple, natural ingredients from places that nurture their fruits and vegetables and care about their quality."[2]

4. Beech-Nut claims to "have an entire department dedicated to ingredient sourcing. Research goes into finding the phenomenal food that goes into our jars."[3]

5. Yet, Beech-Nut fails to list heavy metals as ingredients on the Products' labels or otherwise warn potential purchasers of the presence of heavy metals in its Products.

6. Unbeknown to Plaintiff and Members of the Class, and contrary to the representations on the Products' labels, the Products contain heavy metals in high concentrations, including inorganic arsenic, cadmium, mercury, and lead that, if disclosed to Plaintiff and Members of the Classes prior to purchase, would have caused Plaintiff and Members of the Classes not to purchase or consume the Products.

7. Because Defendant misrepresented the true nature of the ingredients in its Products when it failed to disclose the presence or risk of elevated levels of heavy metals, Plaintiff brings this action, individually and on behalf of all others similarly situated, against Defendant for fraud, fraudulent omission, negligent misrepresentation, and unjust enrichment.

**THE PARTIES**

8. Plaintiff Kathey Henry is a citizen of the State of Mississippi and is a Member of the Class defined herein. Plaintiff purchased the Products from Wal-Marts in Waynesboro, MS,

---

Beech-Nut Banana Stage; (v) Beech-Nut Sweet Peas Stage 2; (w) Beech-Nut Carrots Stage 2; (x) Beech-Nut Green Beans Stage 2; (y) Beech-Nut Sweet Potatoes Stage 2; (z) Beech-Nut Apple Stage 2 (the "Products"). Discovery may reveal additional products at issue.
[2] *See* https://www.beechnut.com/frequently-asked-questions/ (last visited Feb. 22, 2021).
[3] *Id.*

and Shubuta, MS, from Raney's in Waynesboro, MS, and WIC in Waynesboro, MS, and Laurel, MS. Prior to purchasing the Products, Plaintiff saw Defendant's health and nutritional claims on the packaging, including, that the Products are natural and safe for infant consumption, which she relied on in deciding to purchase them.

9. During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff was unaware that the Products contained any level of heavy metals, including inorganic arsenic, would not have purchased the food if the heavy metal concentrations were fully disclosed, or she would not have paid as much for the Products if that information were fully disclosed. Plaintiff was injured by paying a premium for the Products that have no or de minimis value—or whose value was at least less than what she paid for the Products—based on the presence of the high concentrations of heavy metals.

10. Defendant Beech-Nut Nutrition Company is incorporated in New York. Its headquarters and principal place of business is located at One Nutritious Place, Amsterdam, New York 12010.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because there are more than 100 Class Members, the claims of the proposed Class Members exceed $5,000,000, and because Defendant is a citizen of a different state than most Class Members.

12. This Court has personal jurisdiction over Defendant because Defendant is headquartered in the District, regularly sells and markets products and conducts business in this

District, and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

13. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered here, conducts substantial business in this District, a substantial portion of the events complained of took place in this District, and this Court has general jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

14. The market for baby foods is exploding. The baby foods market worldwide is projected to grow by $22.7 billion by the year 2025.[4]

15. Along with the exploding baby food market is a surge in popularity of baby food products that are organic and otherwise 'healthy' for babies.[5]

16. Defendant manufactures, markets, advertises, labels, distributes, and sells Products, both in the past and currently. Defendant has advertised and continues to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

17. On Defendant's packaging and labels emphasize that Beech-Nut baby food is natural, with nothing artificial added. By making these assurances that the Products are natural and safe for infant consumption, Defendant warrants, promises, represents, misleads, labels, and advertises that the Products are free of any heavy metals or unnatural ingredients.

---

[4] *See* https://www.researchandmarkets.com/reports/338658/baby_foods_and_infant_formula_global_market?utm_source=dynamic&utm_medium=BW&utm_code=b559sk&utm_campaign=1386712+-+Global+Baby+Foods+and+Infant+Formula+Market+Assessment+2020-2025&utm_exec=joca220bwd (last visited Feb. 15, 2017).
[5] *Id.*

18. Defendant's packaging and labels further warrant that the Products are safe for babies and infants by making representation about which "Stage" of infant development the Food is appropriate for. For example, Defendant warrants that "Stage 1" food is appropriate for infant consumption "From about four months" and that "Stage 2" food is appropriate for infant consumption "From about 6 months."

 

19. But contrary to Defendant's glaring omissions and misleading claims, the Products have been shown to contain significant levels of arsenic, cadmium, lead, and/or mercury—all known to pose health risks to humans and particularly infants. Defendant's packaging of the Products, however, does not disclose the presence of any of these harmful ingredients.

20. Rather, Beech-Nut directs reassuring representations on its Products' packaging to consumers, like Plaintiff and the Members of the Class, and Beech-Nut intends that Plaintiff and Members of the Class read and rely on its representations.

21. Beech-Nut makes these representations because it knows that healthy baby food is a material factor in baby food purchasing decisions to consumers like Plaintiff and Members of the Class.

22. However, contrary to the representations made on the label and packaging of the Products, the Products contain heavy metals in high concentrations in a manner that is not healthy or nutritious.

*Healthy Babies Bright Futures Report*

23. In April 2019, Healthy Babies Bright Futures, an alliance of nonprofit organizations, commissioned a national laboratory to test 168 containers of baby food—including eighteen (18) of Beech-Nut's baby food products—for total recoverable arsenic, lead, cadmium, and mercury, as well as speciated arsenic for a subset of samples.[6]

24. Healthy Babies Bright Futures found that the samples contained heavy metals, including arsenic, lead, mercury, and cadmium.

25. Arsenic, lead, mercury, and cadmium are neurotoxins that may "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[7] They can also "harm a baby's developing brain and nervous system" and cause "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[8] Even trace amounts of these heavy metals can alter the developing brain and erode a child's IQ.[9]

---

[6] Healthy Babies Bright Futures, *What's In My Baby's Food?* (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last visited Feb. 22, 2021) (hereinafter, "Healthy Babies Bright Futures Report").
[7] *Id*. at 13.
[8] *Id*. at 6.
[9] *Id*. at 1.

26. Arsenic causes potentially irreversible damage, including "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[10] According to the Healthy Babies Bright Futures Report, research continues to confirm that exposure to food containing arsenic, lead, mercury, and cadmium poses "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[11]

### *U.S. House of Representatives Investigation*

27. An investigation by the U.S. House of Representatives Subcommittee on Economic and Consumer Policy (hereafter the "Subcommittee") revealed that baby foods manufactured by Beech-Nut are tainted with significant levels of toxic heavy metals, including arsenic, lead, mercury, and cadmium.[12]

28. Specifically, the Subcommittee found that "Beech-Nut used ingredients after they tested as high as 913.4 ppb arsenic. Beech-Nut routinely used high-arsenic additives that tested over 300 ppb arsenic to address product characteristics such as 'crumb softness.'"[13]

29. The Food and Drug Administration ("FDA"), however, has set the maximum allowable level of inorganic arsenic in bottled water at 10 ppb.[14]

---

[10] *Id* at 13.
[11] *Id*. at 1.
[12] U.S. House of Representatives Subcommittee on Economic & Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021). A copy of the report is available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last visited Feb. 22, 2021).
[13] *Id.* at 3.
[14] *Id.* at 4.

7

30. The Subcommittee also found that "Beech-Nut used ingredients containing as much as 886.9 ppb lead. It used many ingredients with high lead content, including 483 that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead."[15]

31. The FDA has set the maximum allowable level of lead in bottled water at 5 ppb lead.[16]

32. The Subcommittee also found that Beech-Nut used 105 ingredients that tested over 20 ppb cadmium. Some tested much higher, up to 344.55 ppb cadmium.[17]

33. The FDA has set the maximum allowable level of cadmium in bottled water at 5 ppb.[18]

34. Finally, the Subcommittee found mercury in the baby food of the only responding company that tested for it, but that Beech-Nut does not even test for mercury in baby food.

35. Beech-Nut sold its Products for a profit, irrespective of potential health implications. In fact, Beech-Nut sold all Products tested, regardless of how much toxic heavy metal the baby food contained.[19]

36. Defendant's conduct regarding selling its Products regardless of the testing results is especially deceptive and egregious because Defendant specifically touts its health benefits to consumers.

### *Plaintiff Relies Upon the Products' Label to Purchase the Products*

37. Plaintiff was herself a victim of Defendant's mislabeling of the Products.

---

[15] *Id*. at 3.
[16] *Id.* at 4.
[17] *Id*. at 3.
[18] *Id*. at 4.
[19] U.S. House of Representatives Subcommittee on Economic & Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury" (Feb. 4, 2021).

38.     Prior to each purchase, Plaintiff viewed the labels on Defendant's Products, including the representations that they are natural and safe for infant consumption. Each time, Plaintiff reasonably relied upon the labels on Defendant's Products before purchasing them. In particular, Plaintiff purchased the Products believing they would provide her child with a healthy baby food, as claimed on the label and packaging of the Products.

39.     Defendant's labeling claims were a material factor in Plaintiff's decision to purchase Defendant's Products.

40.     At the point of sale, Plaintiff did not know, and had no reason to know, that Defendant's Products were mislabeled as set forth herein.

41.     Plaintiff later learned that the Products contain unhealthy and non-nutritious levels of heavy metals and inorganic arsenic.

42.     Accordingly, Plaintiff was deceived as a result of Defendant's false and misleading marketing practices.

43.     Plaintiff would not have purchased or paid a price premium for the Products had she known they contained the levels of heavy metals and inorganic arsenic in the manner that they did.

44.     Plaintiff is in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations with respect to the Products. Plaintiff and Class Members would have purchased other foods for their children if they had not been deceived by the misleading and deceptive labeling of the Products by Defendant.

## **CLASS ACTION ALLEGATIONS**

45. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The Class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Class (the "Nationwide Class" or "Class"):

> All persons within the United States who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

46. Plaintiff also seeks certification of the following Subclass (the "Mississippi Subclass"):

> All persons in the State of Mississippi who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

47. Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

48. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Members of the Classes number in the thousands to tens of thousands. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

50. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Members of the Classes and predominate over questions affecting only individual Members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

   a. Whether Defendant wrongfully represented and continues to represent that the Products are natural and safe for human infant consumption;

   b. Whether Defendant wrongfully represented and continues to represent that the Products are healthy, superior quality, nutritious, and safe for consumption;

   c. Whether Defendant wrongfully represented and continues to represent that the Products are natural;

   d. Whether Defendant wrongfully represented and continues to represent that the Products are appropriate for consumption by various "Stage[s]" of babies;

   e. Whether Defendant wrongfully failed to disclose that the Products contained or may contain heavy metals;

   f. Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

   g. Whether those representations are likely to deceive a reasonable consumer;

   h. Whether a reasonable consumer would consider the presence or risk of heavy metals as a material fact in purchasing baby food;

   i. Whether Defendant had knowledge that those representations were false, deceptive, and misleading;

   j. Whether Defendant knew or should have known that the Products contained or may contain heavy metals;

      k.      Whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

      l.      Whether a representation that a product is healthy, superior quality, nutritious, and safe for consumption and does not contain arsenic, mercury, cadmium, and/or lead is material to a reasonable consumer;

      m.      Whether Defendant's representations and descriptions on the labeling of the Products are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

      n.      Whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

      o.      Whether Plaintiff and the Members of the Classes are entitled to actual and punitive damages; and

      p.      Whether Plaintiff and Members of the Classes are entitled to declaratory and injunctive relief.

51.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the Named Plaintiff are typical of the claims of other Members of the Classes. All Members of the Classes were comparably injured by Defendant's conduct described above, and there are no defenses available to Defendant that are unique to Plaintiff or any particular Class Members.

52.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of other Class Members; she has retained class counsel competent to prosecute class actions and financially able to represent the Classes.

53. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products until such time that Defendant can demonstrate to the Court's satisfaction that the Products are accurately labeled.

54. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other means of adjudication for this controversy. It would be impracticable for Members of the Classes to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and the Members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT 1

**Fraudulent Misrepresentation**
**(On Behalf of the Nationwide Class and, alternatively,**
**the Mississippi Subclass (collectively, the "Class"))**

55. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

56. Defendant falsely represented to Plaintiff and the Class that the Products are natural, appropriate for consumption by certain "Stage[s]" of babies; and "real food for babies."

57. Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Products.

58. Defendant knew that its representations about the Products were false in that the Products contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

59. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

60. Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Products, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

61. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

62. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT 2

**Fraud by Omission**
**(On Behalf of the Nationwide Class and, alternatively,**
**the Mississippi Subclass (collectively, the "Class"))**

63. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64. Defendant concealed from and failed to disclose to Plaintiff and the Class that their Products contained or were at risk of containing heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

65. Defendant had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability, and risks of the Products because: (1) Defendant was in a superior position to know the true state of facts about its Products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could have reasonably been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

66. The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

67. Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment.

68. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior in comparison to Defendant's advertisements and representations of the Products.

69. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of elevated levels of heavy metals and toxins.

70. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT 3

**Negligent Misrepresentation**
**(On Behalf of the Nationwide Class and, alternatively,**
**the Mississippi Subclass (collectively, the "Class"))**

71. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Products.

73. Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling Products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Products from the marketplace or to take other appropriate remedial action.

74. Defendant knew or should have known that the ingredients, qualities, and characteristics of the Products were not as advertised or suitable for their intended use (consumption by babies) and were otherwise not as warranted and represented by Defendant.

75. Specifically, Defendant knew or should have known that: (1) the Products were not natural; (2) the Products were not nutritious, superior quality, pure, natural, healthy, and safe for consumption because they contained or had a risk of containing levels of heavy metals and/or other unnatural ingredients or contaminants that do not conforming to the packaging; (3) the Products were adulterated or at risk of being adulterated by heavy metals; and (4) the Products were otherwise not as warranted and represented by Defendant.

76. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

77. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT 4

**Unjust Enrichment**
**(On Behalf of the Nationwide Class and, alternatively,**
**the Mississippi Subclass (collectively, the "Class"))**

78. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79. Substantial benefits have been conferred on Defendant by Plaintiff and the Class through their purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

80. Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Products would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant.

81. As such, it would be inequitable for Defendant to retain the benefit of the payments under the circumstances.

82. Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits and not return the value of payments made by Plaintiff and the Class.

83. Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

84. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as a Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B. Enjoining Defendant from selling the Products until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C. Ordering Defendant to pay damages and/or restitution to Plaintiff and the other Members of the Class;

D. Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class, as allowable by law; and

E. Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: February 26, 2021                  Respectfully submitted,

*/s/ Gary E. Mason*
Gary E. Mason
David K. Lietz*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Phone: (202) 429-2990
Fax: (202) 429-2294
gmason@masonllp.com
dlietz@masonllp.com

Jonathan Shub*
Kevin Laukaitis*
**SHUB LAW FORM LLC**
134 Kings Highway East, 2nd Floor
Haddonfield, NJ 08033
Phone: (856) 772-7200
Fax: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Charles E. Schaffer*
David C. Magagna Jr.*
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
jgoldenberg@gs-legal.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (202) 429-2290
Fax: (202) 429-2294
gklinger@masonllp.com

*Attorneys for Plaintiff and the Putative Classes*

*\*pro hac vice to be filed.*